**CINCINNATI BENGALS, INC., Appellee,**

v.

**PAPANIA, Cincinnati Tax Commr., et al., Appellants.**

[Cite as *Cincinnati Bengals, Inc. v. Papania* (1993), —— Ohio App.3d ——.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920272.

Decided Sept. 29, 1993.

*Taft, Stettinius & Hollister, Robert G. Stachler* and *Stephen M. Nechemias,* for appellee.

*Fay D. Dupuis,* City Solicitor, and *Richard Ganulin, Jr.,* Assistant City Solicitor, for appellants.

*Per Curiam.*

The defendants-appellants, the Tax Commissioner of the city of Cincinnati and its Income Tax Bureau's Board of Review, appeal from the trial court's opinion and entry holding that the pro-rata share of revenue from network television contracts received by plaintiff-appellee the Cincinnati Bengals, Inc. ("the Bengals, Inc.") is intangible income properly exempt from municipal taxation.

The Bengals, Inc., an Ohio corporation, is a member of the National Football League ("the NFL"), an unincorporated association. For each year at issue in this cause, contracts were entered into between member professional football teams and the major television networks to broadcast NFL games. The contracts reserved the copyright of televised games to the NFL on behalf of its member teams. The networks were to make payments to the member teams, through an NFL "Clearance Account," for the right to broadcast the games. The payments were then distributed from the account to the member teams. Regardless of the source of the income placed into the account, each member team received an equal share of the revenue. Similarly, receipt of television revenue was not related to a member team's actual appearance on a televised broadcast. For example, the Bengals, Inc. would receive an equal share of the television revenue from the network broadcasting Monday night games even in seasons when the team did not appear in a Monday night game.

On January 24, 1990, the appellant tax commissioner assessed income tax against the Bengals, Inc. for television revenue received during the team's fiscal years 1987 through 1989. The Bengals, Inc. appealed the assessment to the appellant board of review. The board modified the commissioner's assessment.

The Bengals, Inc. sought review of the board's November 9, 1990 decision in the court of common pleas pursuant to R.C. Chapter 2506. On February 26, 1992, the court journalized its opinion and entry, based upon the transcript of the administrative hearings and an expanded record permitted under R.C. 2506.03. Appellants timely appealed.

Initially, we note that pursuant to R.C. 2506.04 the court of common pleas may determine whether the board's decision is, *inter alia*, "illegal," *i.e.*, contrary to law. R.C. 2506.04; see *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 12 O.O.3d 198, 389 N.E.2d 1113. Subsequent appeals to this court are limited to questions of law. Appellants have raised such a question of law without challenging either the sufficiency or the weight of evidence adduced below. We will, therefore, affirm the opinion of the common pleas court unless we conclude that, in view of the largely undisputed factual fundament, its adjudication was contrary to law. R.C. 2506.04.

Appellants first allege, in a single assignment of error, that the trial court erred in concluding the Bengals, Inc.'s television revenue was not taxable. Appellants urge that the revenue is taxable because it is a payment by the NFL, pursuant to a franchise agreement, for services provided by the Bengals, Inc., *i.e.*, playing a full schedule of football games. Payments under a contract for services are ordinarily taxable by municipal corporations. Cincinnati Municipal Code Chapter 311; R.C. 5701.06(C)(2) (payments from contracts of employment are not intangible income).

R.C. 718.01(F)(3), however, prohibits municipal taxation of "intangible income" as that term is defined in R.C. Chapter 5701. The definition of "intangible income" embraces income from investments including "annuities, *royalties*, and other contractual obligations for the periodic payment of money." (Emphasis added.) R.C. 5701.06(C).

The Bengals, Inc. contends that the team's share of television revenue is a royalty payment given in exchange for a limited license to the television networks to exploit commercially the copyrighted, intangible property of all the member teams—their football games—and thus is non-taxable intangible income under R.C. Chapters 701 and 5701.

Based upon the foregoing and our review of the record, we are persuaded that the network television revenues received by the Bengals, Inc. are substantially

equivalent to royalty payments and thus constitute "intangible income" within the meaning of R.C. Chapter 718.

The network television revenues received by the Bengals, Inc. are like royalty payments because the Bengals, Inc. and the NFL, unlike a relationship under a personal services contract, retain substantial rights in the use of the broadcasts of their games. As appellants contend, the Bengals, Inc. is obligated to play games, *i.e.*, perform services, in exchange for payment, according to a schedule agreed to by the networks and the NFL, much as in a personal services contract. The contracts at issue, however, reserve to the NFL, on behalf of its member teams, numerous rights and privileges with respect to the game broadcasts. Rights to the broadcast of games are retained by the NFL, for example, under the following circumstances: a game is telecast outside the normal viewing area of the networks, such as broadcasts to Europe; a game is to be broadcast by another network on Monday night; a game is rescheduled because of a stadium conflict with post-season baseball games; a game is not televised because of schedule conflicts within the network's control; or a game is rescheduled for any reason, and the network chooses not to broadcast it. The contracts also place significant limitations on the networks' use of film and videotape highlights of the games. Moreover, member teams receive revenue for games in which they do not appear or perform, quite unlike a personal services contract.

Additionally, we note that payments for the right to use or publish intangible property, such as an author's copyrighted material, have been characterized as royalties under R.C. 5701.06, and are thus intangible income. *Austin v. Porterfield* (1972), 28 Ohio St.2d 219, 57 O.O.2d 462, 277 N.E.2d 551; *French v. Glander* (1946), 146 Ohio St. 225, 32 O.O. 204, 65 N.E.2d 61. Here, the networks similarly make payments to broadcast the copyrighted games of the NFL and its member teams.

We also find persuasive the analysis of the Michigan Court of Appeals as to whether the revenue of the Detroit Lions, another NFL member, derived from nearly identical contracts, constituted royalty income. In *Detroit Lions, Inc. v. Dept. of Treasury* (1986), 157 Mich.App. 207, 403 N.W.2d 812, the court also held that because the NFL retained important rights of ownership, a sale of services had not taken place. Rather, the court concluded that the arrangement was most like a licensing agreement. The revenue received by the Lions was thus royalty income. *Id.* at 216–217, 403 N.W.2d at 816–817.

Thus, we hold that the trial court did not err as a matter of law in concluding, based upon its findings, that the television revenues are payments for the right to use intangible property, and thus are royalties for purposes of municipal taxation.

Appellants next contend that the Bengals, Inc.'s revenue is nonetheless taxable as the network payments are made to the NFL's Clearance Account and not to the members. The revenues are only then distributed to the teams as payments from the NFL itself. Appellants' argument is without merit.

The trial court made a factual finding that the television networks pay the member teams, not the NFL, for the broadcast rights to the football games. See T.d. 8, Ex. B through H (network television contracts). Even if payments were made in the manner described by appellants, the character of the revenue received by the NFL, *i.e.*, a royalty, would remain the same in the hands of its members. Section 702(a)(7), Title 26, U.S.Code; Treasury Regulation 1.702–(a)(8)(ii).

As the trial court's decision is not contrary to law, we have no basis to overturn the court's determination that the television payments to the Bengals, Inc. are royalty payments and are thus exempt from municipal income taxation. The judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., DOAN and M.B. BETTMAN, JJ., concur.

**R & R PLASTICS, INC., Appellant,**

v.

**F.E. MYERS COMPANY et al., Appellees.**

[Cite as *R & R Plastics, Inc. v. F.E. Myers Co.* (1993), —— Ohio App.3d ——.]

Court of Appeals of Ohio,
Fulton County.

No. 93FU000001.

Decided Dec. 30, 1993.